UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00001-MOC

| | |
|---|---|
| LC SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on review of a final decision of the Commissioner of Social Security denying Plaintiff LC Smith's application for disability and disability insurance benefits under Title II, of the Social Security Act ("Act"). Plaintiff filed a Motion for Summary Judgment, requesting remand for rehearing. (See Doc. No. 11). The Commissioner in turn filed a Motion for Summary Judgment, requesting affirmance. (See Doc. No. 17). As set forth below, Plaintiff's motion is denied, the Commissioner's motion is granted, and this action is dismissed.

## I. BACKGROUND

### A. Administrative Exhaustion

On February 1, 2016, Plaintiff filed an application for a period of disability and disability insurance benefits alleging a disability onset date of May 6, 2015 (Tr. 10, 190-193). The application was denied initially and upon reconsideration (Tr. 10, 118-121, 123-130). On August 16, 2018, the ALJ held a hearing where Plaintiff appeared along with his attorney and an impartial vocational expert (Tr. 10, 39-96). The ALJ issued a decision on November 19, 2018, finding that Plaintiff was not disabled (Tr. 10-19). On February 3, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), thereby rendering the ALJ's decision the final decision of the

Commissioner. Plaintiff has exhausted available administrative remedies, so this case is ripe for judicial review, pursuant to 42 U.S.C. § 405(g).

## B. Sequential Evaluation Process

The Act provides that "an individual shall be considered to be disabled . . . if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); see id. § 423(d)(1)(A). The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. § 404, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

See 20 C.F.R. §§ 404.1520, 416.920. The claimant "bears the burden of production and proof during the first four steps of the inquiry." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). If the claimant carries its burden through the fourth step, the burden shifts to the Commissioner to show other work exists in the national economy that the claimant can perform. See id.

## C. The Administrative Decision

2

The issue before the ALJ was whether Plaintiff was disabled from May 6, 2015, the alleged disability onset date, through December 31, 2017, the date last insured. Using the sequential evaluation process, the ALJ concluded at step five that Plaintiff was not disabled during that period within the meaning of the Act.

In particular, the ALJ found at step one of the sequential evaluation that Plaintiff had not engaged in SGA since May 6, 2015, the alleged onset date (Tr. 12), and at step two that Plaintiff had the following combination of severe, medically determinable impairments: heavy metal poisoning, gastroesophageal reflux disease (GERD)/colitis, lumbar spine (spondylosis and mild degenerative changes and radiculopathy), neuropathy, fibromyalgia, polyarthralgia, asthma, and obesity (Tr. 12). The ALJ noted that the evidence did not demonstrate that history of obstructive sleep apnea, hypertension, hypogonadism, fatty liver, hypothyroidism, hyperlipidemia, history of chronic kidney disease, headaches, and myositis caused, or were expected to cause more than minimal work-related limitations lasting at least 12 consecutive months (Tr. 12).

The ALJ then found at step three that none of Plaintiff's impairments, nor any combination thereof, met or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functioning capacity ("RFC")[1] to perform light work, as defined in 20 C.F.R. § 404.1567(b), except the claimant can occasionally climb ramps and stairs but never ladders, ropes or scaffolds; he can frequently balance, stoop, kneel, crouch; and he can occasionally crawl but should have no

---

[1] An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, an ALJ must consider all of the claimant's impairments, including impairments that are not severe. See 20 C.F.R. §§ 404.1520(e) and 404.1545.

3

concentrated exposure to hazardous work settings as well as avoiding concentrated exposure to dusts, fumes, odors, or pulmonary irritants (Tr. 13). In addition, he would need the option to sit for 30 minutes after standing or walking for 30 minutes. Finally, he would be off-task 10 percent of the workday in addition to normal work breaks (Tr. 13).

The ALJ then found at step four that Plaintiff could not perform any past relevant work and at five that Plaintiff — given his age, education, work experience and RFC — could perform jobs that existed in significant numbers in the national economy (Tr. 18-19). Thus, the ALJ decided that Plaintiff was not disabled within the meaning of the Act from May 6, 2015, through December 31, 2017, the date last insured (Tr. 19).

## II. DISCUSSION

In considering cross-motions for summary judgment, this Court "examines each motion separately, employing the familiar standard" provided by Federal Rule of Civil Procedure 56. Desmond v. PNGI Charles Town Gaming, 630 F.3d 351, 354 (4th Cir. 2011). Thus, each motion is reviewed "on its own merits 'to determine whether either of the parties deserve judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted).

When reviewing a disability determination, the Court "is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Courts do not conduct *de novo* review of the evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Instead, our inquiry is limited to whether there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla evidence but may be less than a preponderance."

Id. The Court will not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Id. (alterations omitted). Put simply, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id. (alterations omitted).

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). Thus, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Id. If the Court has "no way of evaluating the basis for the ALJ's decision, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Id. (quoting Florida Power & Light v. Lorion, 470 U.S. 729, 744 (1985)); see Brown v. Colvin, 639 F. App'x 921, 922 (4th Cir. 2016) (explaining courts do not "min[e] facts from the [administrative] record to support the ALJ's decisions"). This ensures the ALJ can "adequately explain his reasoning . . . in the first instance." Radford, 734 F.3d at 296.

In this case, Plaintiff contends that the ALJ erred in the evaluation of Dr. Bundy, Dr. Habashi-Ahigian, and Dr. Mouortada's opinions. Plaintiff alleges these failures frustrate judicial review, so remand is appropriate for reconsideration. The Court disagrees and finds that the ALJ properly evaluated these opinions. An ALJ's determination "as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'. . . or has failed to give a sufficient reason for the weight afforded a particular opinion." Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted).

5

As the ALJ noted in the decision, Dr. Bundy opined that Plaintiff could not work because he needed to frequently lie down and he could only occasionally sit, stand, walk, or drive (Tr. 15, 2216-2218). Additionally, Dr. Bundy opined that Plaintiff could occasionally lift and carry up to 10 pounds and never more and occasionally perform all postural activities (Tr. 15, 2216-2218). Dr. Bundy also found that Plaintiff could not work full time, could not be exposed to machinery, and other environmental conditions (Tr. 15, 2216-2218). The ALJ determined that this opinion was only entitled to partial weight because there was no evidence of functional testing to support these limitations. See 20 C.F.R. § 404.1527(c)(3).

While Dr. Bundy opined Plaintiff needed to frequently lie down and could occasionally lift and carry up to 10 pounds, imaging of the lumbar spine the month prior showed only mild spondylosis at L2-3 (Tr. 15). Moreover, a CT of the back was negative and a bone scan showed only mild arthritic changes in the shoulders and ankles (Tr. 15). A stress test the same month was normal and exercise tolerance was fair without evidence for ischemia (Tr. 15). The ALJ noted that an EMG showed sensory neuropathy in December 2015 and a MRI of the claimant's lumbar spine showed mild degenerative changes in January 2016 (Tr. 15). In April 2016, the ALJ acknowledged Plaintiff's report of serious symptoms such as weakness, fatigue and his legs giving out (Tr. 16). Notwithstanding these complaints, Plaintiff's physical examination revealed normal ambulation, no joint tenderness to the hands, wrists, hips, shoulders, knees, ankles or feet, and straight leg raise was negative (Tr. 16). Similarly, subsequent treatment records present similar complaints but no more than mild objective findings (Tr. 16). In October 2016, Dr. Bundy opined that Plaintiff was "probably disabled" and, again, the ALJ determined that this opinion was unsupported by the evidentiary record (Tr. 16). The ALJ went on to note that there was no clear cause of Plaintiff's

multiple alleged symptoms (Tr. 16). By June 2018, Plaintiff's gait continued to be observed as normal along with his musculoskeletal examination (Tr. 16).

As a threshold matter, the question to whether the Plaintiff is disabled is reserved for the Commissioner of Social Security. 20 C.F.R. §§ 404.1527(d) and 416.927(d)); see also Craig, 76 F.3d at 590 (stating that conclusory opinions based upon plaintiff's subjective complaints are not entitled to particular deference). Here, the ALJ did not err in finding that Dr. Bundy's statements attempted to make a determination that is ultimately reserved to the Commissioner. Additionally, the ALJ noted that Dr. Bundy's assessments were unsupported by the evidence. As the ALJ discussed, despite Plaintiff's complaints of physical pain, physical examinations were generally normal.

Similarly, Dr. Habashi-Ahigian opined that Plaintiff required a highly restrictive RFC that necessitated lying down, more than two 10-minute rest breaks and one 30-minute meal break and could not maintain attention and stay on task 85 percent of the workday/workweek (Tr. 2166-2167). The ALJ explained that this opinion was inconsistent with Plaintiff's treatment history, in addition to being after the last insured date, and was therefore afforded little weight. As discussed above, Plaintiff's treatment history showed that imaging revealed generally mild findings and Plaintiff's gait was regularly described as normal. It is also important to note that there is also no indication that more intense treatment modalities were prescribed. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986); Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (inconsistencies between the claimant's allegations and the treatment sought to alleviate that condition is highly probative); See also Gatson v. Berryhill, 1:17-CV-182, 2018 WL 3873593, at*6 (W.D.N.C. 2018) (It is not improper for the ALJ to consider the absence of evidence when formulating the RFC).

The opinions of Dr. Bundy and Dr. Habashi-Ahigian were weighed and considered by the ALJ. In sum, substantial evidence supports the ALJ's decision regarding these medical opinions.

Plaintiff further argues that the ALJ failed to explain the reason for discounting Dr. Mourtada's opinion (Pl. Br. 25-29). As the ALJ discussed, in February 2018 Dr. Mourtada indicated that Plaintiff's symptoms began in 2015 after working with a company mixing chemicals (Tr. 16, 2149-2157). Dr. Mourtada described the etiology of Plaintiff's symptoms as related to heavy metal poisoning. (Id.). The ALJ noted that Dr. Mourtada did not see any extensive work-up to confirm such a diagnosis (Tr. 16). Dr. Mourtada opined that Plaintiff could not work fulltime and limited Plaintiff to sedentary work with never, driving, bending, crawling, climbing, or balancing (Tr. 16-17).

Contrary to Plaintiff's argument, the ALJ explained that Dr. Mourtada was entitled to only light weight because despite admitting to not having full records, Dr. Mourtada did not base his assessment on any functional testing or blood tests to confirm heavy metal poisoning (Tr. 17). See 20 C.F.R. § 404.1527(c)(3). The ALJ therefore found that the functional limitations Dr. Mourtada assigned to Plaintiff are extreme given that most of the objective findings were normal. As the ALJ noted, the less than sedentary limitations that Dr. Mourtada opined to were more consistent with Plaintiff's subjective complaints than anything presented during Plaintiff's treatment history.

To be clear, the ALJ found that Plaintiff's impairments were severe impairments that required accommodation in the RFC, but also that they were not disabling. These facts are not contradictory, and it was the ALJ's duty to consider the extent of the restrictions caused by Plaintiff's impairments. In other words, it was proper for the ALJ to consider whether objective findings were consistently normal, whether his condition was stable, and how he was able to function despite his alleged symptoms (Tr. 13-17). Importantly, although not highlighted in

8

Plaintiff's brief, the ALJ did not simply rely on evidence supposedly contradicting his assertions. Instead, the ALJ evaluated all of the evidence, which revealed that imaging results were mostly normal, spirometry was within normal limits, and numerous musculoskeletal examinations were within normal limits (Tr. 13-17). The ALJ accounted for Plaintiff's allegations to the extent they were consistent with and supported by the evidence when determining the RFC. See Craig, 76 F.3d at 595 (a claimant's subjective allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence").

As discussed above, the ALJ supported his decision with substantial evidence and must be upheld.

## ORDER

**IT IS, THEREFORE, ORDERED** that: Plaintiff's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**; Defendant's Motion for Summary Judgment, (Doc. No. 17), is **GRANTED**. The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**, and this action is **DISMISSED**.

Signed: January 9, 2021

Max O. Cogburn Jr
United States District Judge